UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LARRY D. SAPP, | ) |
| Plaintiff, | ) No. 1:22-CV-5314 |
| v. | ) |
|  | ) Judge Edmond E. Chang |
| KIMBERLY FOXX, individually and in her official capacity, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Larry Sapp challenges the constitutionality of two Illinois statutes barring those convicted of felonies from holding public office. It was under those statutes that, back in September 2022, the Circuit Court of Cook County ousted Sapp from the office of Trustee of Sauk Village, Illinois. R. 34-4, 2022 State Court Op. and Order at 4.[1] The state court agreed with the State of Illinois that the two laws, 65 ILCS 5/3.1-10.5(b), 10 ILCS 5/29-15, disqualified Sapp from holding public office absent a pardon or restoration of rights. *Id.* at 1–4. Sapp then brought this federal action, and eventually filed an amended complaint against Cook County State's Attorney Kimberly Foxx individually and in her official capacity, seeking declaratory and injunctive relief. R. 33, Am. Compl. ¶¶ 88–90.[2] Specifically, Sapp seeks a declaration that the Illinois laws are unconstitutional under the Eighth Amendment, and he also asks for

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]The Court has subject matter jurisdiction over this federal-question case under 28 U.S.C. § 1331.

preliminary and permanent injunctions to prevent Foxx from enforcing those statutes. *Id.* Foxx moves for dismissal of the case for failure to adequately state a claim. Fed. R. Civ. P. 12(b)(6); R. 34, Mot. Dismiss. For the reasons explained in this opinion, Foxx's motion is granted and Sapp's motion for provisional relief is correspondingly denied.

## I. Background

For purposes of this motion to dismiss, the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in Sapp's favor. *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012).

Sapp has twice been convicted of felony drug offenses, once in 1988 and again in 1998. Am. Compl. ¶ 1. Decades later, on April 6, 2021, he was elected to the Sauk Village Board of Trustees; the position comes with a monthly salary of $600. *Id.* ¶ 2. His election went unchallenged until the Cook County State's Attorney's Office received an anonymous tip about Sapp's old felony convictions. *Id.* ¶ 3. Representing the State of Illinois, the Office then filed a lawsuit to have Sapp removed as a trustee. Following the state laws, the Circuit Court of Cook County entered an order ousting Sapp under 65 ILCS 5/3.1-10.5(b) and 10 ILCS 5/29-15. *Id.*; 2022 State Court Op. and Order. In its order, the state court noted that it had earlier struck Sapp's petition for relief from disabilities—which would have made him eligible for office—because that type of petition must be addressed to the criminal courts that imposed his sentences.

After the removal, Sapp filed a candidacy statement to run for another open Trustee position. Am. Compl. ¶ 4. The State's Attorney's Office again found out. The

2

Office filed a motion in state court, seeking to hold him in contempt. *Id.* But the state court denied the motion, clarifying that its prior order was limited to ouster and did "not extend to prevent Mr. Sapp … from filing a petition for candidacy for office now or in the future." R. 40-1, 2023 State Court Order. The court also explained that the State could challenge Sapp's candidacy petition in a separate action or, if he was elected, could bring another proceeding to remove him. *Id.* There was no need; Sapp withdrew from the Trustee election, allegedly due to the efforts to enforce the statutes barring him from public office. Am. Compl. ¶ 56.[3]

Sapp later filed this lawsuit, and he filed an amended complaint after two dismissal motions were filed, one filed by the Governor in his official capacity (so, in effect, by the State of Illinois) and one by the Cook County entities. R. 18, 19, 20. Via the amended complaint, Sapp dropped the State from the lawsuit. *See* R. 33, Am. Compl. The remaining Defendants—the State's Attorney's Office and Foxx individually—again have moved to dismiss. Mot. Dismiss. Recently, Sapp learned of the intention of a Sauk Village Trustee to resign; the resignation allegedly took effect on June 1, 2023. R. 42, TRO Mot. Sapp filed a motion for a temporary restraining order to prevent Foxx from interfering with his attempts to occupy that newest vacancy. *Id.*[4]

---

[3] A separate allegation says that "Sauk Village rejected Mr. Sapp's name as a result of Defendant Foxx's relentless efforts." Am. Compl. ¶ 4. In any event, it does not matter to this opinion whether Sapp withdrew on his own or was rejected by the Village.

[4] For the sake of completeness, the Court considers those arguments in the TRO briefing that are relevant to the motion to dismiss. But obviously, the TRO motion itself is rendered moot by the dismissal of this case.

3

## II. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).[5] The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

---

[5] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

### III. Analysis

In her motion to dismiss, Foxx argues that the amended complaint should be dismissed for four reasons, asserting that Sapp's claim (1) is barred by issue preclusion or claim preclusion; (2) is meritless as a matter of law; (3) does not set forth sufficient individual-capacity allegations; and (4) fails as to the official-capacity claim because the State's Attorney's Office is entitled to Eleventh Amendment immunity. Mot. Dismiss at 4–13. Sapp responds that his claim is sufficiently pled and that the state court that barred him from office already rejected Foxx's issue- or claim-preclusion arguments. R. 40, Pl.'s Resp. to Mot. Dismiss at 14–19. He also attempts to unilaterally dismiss the individual-capacity claim against Foxx, though he says that he will replead the claim after this Court decides the remainder of the dismissal motion. *Id.* at 19. Relatedly, he does not respond to Foxx's argument that she is protected by Eleventh Amendment immunity in her official capacity. With those lines drawn, the Court turns to deciding the necessary issues.

**A. Eleventh Amendment Immunity**

First, "the Eleventh Amendment prohibits federal courts from deciding suits brought by private litigants against states or their agencies, and that prohibition extends to state officials acting in their official capacities." *Garcia v. City of Chicago, Ill.*, 24 F.3d 966, 969 (7th Cir. 1994) (cleaned up). Importantly, "the Illinois Supreme Court decided in 1990 that State's Attorneys [like Foxx] are state officials. *Id.* There are exceptions to Eleventh Amendment immunity, *see Indiana Prot. & Advoc. Servs. v. Indiana Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 371 (7th Cir. 2010), but Sapp

5

fails to meaningfully point to any in his response to Foxx on this issue. In the summary of argument, Sapp mentions that "under *Ex Parte Young*, Defendant Foxx knowingly enforces punishment statutes without term limits." Pl.'s Resp to Mot. Dismiss at 11. But beyond that one assertion, he fails to explain how *Ex Parte Young* might apply to defeat sovereign immunity here. He does the same thing in his reply on the TRO motion—he mentions that *Ex Parte Young* provides an exception to Foxx's sovereign-immunity defense but does not elaborate. R. 46, Pl.'s TRO Reply at 1, 13.

In essence, Sapp fails to develop an argument on an exception to sovereign immunity. The Court cannot step in to develop it for him. The result is that he effectively abandons or forfeits his litigation of this key issue. *Firestone Fin. Corp. v. Meyer*, 796 F.3d 822, 825 (7th Cir. 2015) ("A party generally forfeits an argument or issue not raised in response to a motion to dismiss.") (cleaned up); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply that rule where a party fails to develop arguments related to a discrete issue, and we also apply that rule where a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss."). So, Foxx is entitled to immunity for those allegations brought against her in her official capacity. Having said that, the merits (or lack thereof) of the claims is discussed later in this opinion, because it is true that injunctive and declaratory relief can be ordered against a state official acting in her official capacity so long as there is no monetary-damages aspect to that kind of go-forward relief.

6

**B. Individual-Capacity Allegations**

Before getting to the merits of the claims against the Cook County State's Attorney's Office, the Court notes that Sapp's attempt at a voluntary, partial dismissal of the individual-capacity allegations against Foxx has no basis in the Rules of Civil Procedure. Sapp declares, on his own, that he voluntarily dismisses the individual-capacity claim against Foxx—but will replead it after this Court decides the dismissal motion on the claims against the State's Attorney's Office. Pl.'s Resp. to Mot. Dismiss at 19. But when—as in this case—the defendant has already answered the complaint, voluntary dismissal may only be obtained "by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). In other words, Sapp cannot unilaterally dismiss part of his action. *See Wojtas v. Cap. Guardian Tr. Co.*, 477 F.3d 924, 927 (7th Cir. 2007) ("Motions for voluntary dismissal under Rule 41(a)(2) are committed to the district court's discretion[.]") (cleaned up).

What's more, Sapp is proposing piecemeal litigation. He offers no explanation for why he did not include individual-capacity allegations in the operative amended complaint. The amended complaint does not include any plausible allegations that Foxx was personally involved in the state case to oust Sapp from the trustee position. True, the amended complaint repeatedly mentions that "Foxx" took actions against Sapp. But those allegations are made against Foxx in her *official* capacity as the State's Attorney responsible for enforcing the challenged statutes.

For instance, Sapp highlights the allegation that "Defendant Foxx learned of Mr. Sapp's felonies through an anonymous tip to the chief of the municipal division

7

for Defendant Foxx." Pl.'s Resp to Mot. Dismiss at 14–19 (quoting Am. Compl. ¶ 3). This allegation is instructive for two reasons. For one, it illustrates the point that when Sapp refers to the actions of Foxx, he is really referring to the actions of her Office in enforcing the challenged statutes. After all, the tip is alleged to have been made to the chief of the municipal division, not to Foxx personally. There are no allegations that Foxx personally worked on the case—the state court filings are signed by Silvia Mercado Masters, an Assistant State's Attorney. *See, e.g.*, R. 34-1, State Court *Quo Warranto* Compl. And secondly, the anonymous-tip allegation—like the rest of the allegations in the amended complaint—does not speak to any personal vendetta that Foxx might have had against Sapp, or to some corrupt or illegitimate motive for pursuing action against him. Rather, what *is* alleged is that the State's Attorney (through the Office) worked to enforce statutes on the books. Put another way, the allegations are against Foxx acting in her official capacity. That makes sense. After all, Sapp is suing for declaratory and injunctive relief from a set of laws, not for damages against Foxx individually for some kind of tortious or improper conduct. *See Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) (explaining in the context of Section 1983 that "where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in her official capacity" but "where the plaintiff alleges tortious conduct of an individual acting under color of state law, the defendant has been sued in her individual capacity") (cleaned up).

In any event, Foxx also argues that any personal-involvement claim against her would be barred by absolute prosecutorial immunity. Mot. Dismiss at 12–13. Sapp

8

does not respond to this contention. And so he once more forfeits an important issue that he should have addressed. For all these reasons—including that Sapp implicitly concedes that he failed to include personal-involvement allegations—any individual-capacity claim against Foxx is dismissed. The dismissal is with prejudice because Sapp has already amended the complaint once and also provides no hint as to what individual-capacity allegations would fix the deficiency.[6]

### C. Eighth Amendment

In the alternative, Sapp's constitutional claims are without merit. Specifically, Sapp argues that Illinois's felon-bar statutes run afoul of the Cruel and Unusual Clause and (perhaps he argues this too) the Excessive Fines Clause of the Eighth Amendment. Pl.'s Resp. to Mot. Dismiss at 11, 13–18.[7] He repeatedly (and emphatically) disclaims any attempt to challenge the statutes under any other clause of the Constitution, like the Double Jeopardy Clause of the Fifth Amendment. R. 42, TRO

---

[6]In the TRO motion reply, Sapp argues that Foxx acted outside her official authority to prevent Sapp from obtaining a pardon from the Governor because she "is the only individual with sufficient authority to urge the Governor to make a pardon decision after two years, among other critical reasons, *i.e.*, close relationships to the Mayor of Sauk Village." Reply to TRO Mot. at 4–5 n.1. But this argument is completely speculative; it is absent from the motion-to-dismiss briefing; and, importantly, disconnected from any allegation in the amended complaint.

[7]In his TRO reply, Sapp argues that Foxx forfeited her argument about the constitutionality of the felon-bar statutes under the Eighth Amendment's Cruel and Unusual Punishment Clause because she misclassified the challenge as arising under the Double Jeopardy Clause. Pl.'s TRO Reply at 1. Yet, Foxx *did* substantively address Sapp's contention that the statutes at issue are punitive, even if she did so in the belief that the underlying challenge was under the Double Jeopardy Clause—and the case law is the same. And, more importantly, Sapp is raising a question of law. The Court would probably not declare a statute unconstitutional simply because a party did not address an argument or because, as here, a party misunderstood the basis for a constitutional challenge in light of a sprawling and, at times, meandering pleading.

Mot.; R. 42-1, Pl.'s TRO Br. at 22 ("By conjuring a Double Jeopardy theory Defendant ignores Plaintiff's legal claim that the statutes are subject to the Eighth Amendment and require a time limit."); Pl.'s TRO Reply at 9 ("This motion for temporary restraining order is predicated on Mr. Sapp's Amended Complaint allegations—strictly dealing with the Cruel and Unusual Clause of the Eighth Amendment—not the Excessive Fines Clause, the Double Jeopardy Clause, the Equal Protection Clause, the Commerce Clause, or any other constitutional clause Defendant would like to address.").[8]

Sapp does not cite any case—nor has the Court found any—that has ever held that felon-bar statutes like 65 ILCS 5/3.1-10.5(b) and 10 ILCS 5/29-15 constitute cruel and unusual punishment under the Eighth Amendment. Indeed, he does not even cite any case that has ever held felon-disenfranchisement statutes—those that deprive felons of the right to vote—to violate the Eighth Amendment. That is important because the right to vote is a fundamental right, *Tully v. Okeson*, 977 F.3d 608, 611 (7th Cir. 2020), whereas "the right to candidacy is not," *Brazil-Breashears v. Bilandic*, 53 F.3d 789, 792 (7th Cir. 1995); *Parker v. Lyons*, 757 F.3d 701, 707 (7th Cir. 2014) ("The right to run for or hold public office is not a fundamental right.") (cleaned up), *overruled on other grounds by Hadzi-Tanovic v. Johnson*, 62 F.4th 394 (7th Cir. 2023). In short, Sapp does not cite any authority in support of his legal argument that felon-

---

[8]Sapp also argues that the felon-bar statutes make him what he calls a "legal slave" under the Thirteenth Amendment. Pl.'s Resp. to Mot. Dismiss at 4. But involuntary servitude in the context of the Thirteenth Amendment prohibits "situations in which *labor* is compelled by physical coercion or force of law." *United States v. Kozminski*, 487 U.S. 931, 943 (1988) (emphasis added) (cleaned up). Here, Sapp is not being compelled to perform labor. Instead, he is prohibited from doing something: holding office.

bar statutes—even those that are indefinite and premised on long-ago convictions—violate the Eighth Amendment.

That said, it is true that statutory proscriptions or impositions can constitute cruel and unusual punishment if they are (1) punitive and (2) grossly disproportionate to the corresponding offense. *See Graham v. Fla.*, 560 U.S. 48, 59 (2010), *as modified* (July 6, 2010) ("Embodied in the Constitution's ban on cruel and unusual punishments is the precept of justice that punishment for crime should be graduated and proportioned to the offense.") (cleaned up); *Solem v. Helm*, 463 U.S. 277, 284 (1983) ("The principle that a punishment should be proportionate to the crime is deeply rooted and frequently repeated in common-law jurisprudence."). In the context of that test, Sapp argues that Illinois's felon-bar statutes are punitive. Pl.'s Resp. to Mot. Dismiss at 13. He makes that argument even though "Illinois's stated interest in barring felons from elective office is to ensure public confidence in the honesty and integrity of those serving in state and local offices." *Parker*, 757 F.3d at 707. In other words, Illinois intended the felon-bar statutes to be civil in nature and nonpunitive. And "because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Smith v. Doe*, 538 U.S. 84, 92 (2003) (cleaned up). If, as here, "the intention was to enact a regulatory scheme that is civil and nonpunitive, [the Court] must further examine whether the statutory scheme is so punitive either in purpose or *effect* as to negate [the State's] intention to deem it civil." *Id.* (cleaned up) (emphasis added).

So, with no clear reason to believe that Illinois intended the felon-bar statutes to be punitive, it is necessary to evaluate the laws' effect.[9] To do that, the seven factors from *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69 (1963), serve as a useful framework. *Smith*, 538 U.S. at 97. That framework has been traditionally used in different contexts to determine whether a statute "is penal or regulatory in character." *Mendoza–Martinez*, 372 U.S. at 168. The specific factors are whether the statutory scheme "involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned." *Id.* at 168–69.

In his dismissal-motion response, Sapp raises two points under the *Mendoza–Martinez* framework. One, that "[o]ne-third of Illinoisans, including Mr. Sapp, suffer

---

[9]Sapp argues that the felon-bar statutes are intended to be punitive because a relief-from-disabilities petition must be brought before the criminal court that sentenced the individual seeking relief. Pl.'s Resp. to Mot. Dismiss at 14. And because the felon-bar statutes only apply to convicted felons. *Id.* at 15. But "felons are not a protected class." *United States v. Hook*, 471 F.3d 766, 774 (7th Cir. 2006) (cleaned up); *see also Talley v. Lane*, 13 F.3d 1031, 1034 (7th Cir. 1994) ("Ex-convicts are not a suspect class.") (cleaned up). And so, Illinois need only a rational basis for the felon-bar statutes. *Hook*, 471 F.3d at 774. Here, the state's stated basis—which Sapp acknowledges—is trying to ensure public confidence in the honesty and integrity of those serving in state and local offices. Pl.'s Resp. to Mot. Dismiss at 10, 13–14. That is enough. That a felon might need to seek relief from disabilities from the criminal court that sentenced him does not make 65 ILCS 5/3.1-10.5(b) and 10 ILCS 5/29-15 punitive in contravention of the legislature's intent.

12

under 1,189 Disability Statutes[,] which cumulatively amount to civil death because they do not have time restrictions." Pl.'s Resp. to Mot. Dismiss at 15. And relatedly, that the statutes are unreasonable on their face because they "do not have term limits or time periods." *Id.* at 16. Sapp expands on these points in the TRO briefing. There, he adds that being barred from holding public office is an affirmative disability or restraint that has historically been regarded as a punishment, that comes into play on a finding of scienter, that promotes retribution, for which there is no alternative, nonpunitive purpose, and which appears excessive in relation to the alternative, non-punitive purpose. Pl.'s TRO Br. at 14–19. Even though this argument comes in the context of Sapp's TRO arguments, and were not developed in the response to Foxx's motion to dismiss, the Court will consider them here.

To start, Sapp does not explain how his ineligibility is an affirmative disability or restraint. Pl.'s TRO Br. at 14. He simply asserts that it must be so because it was imposed because of his criminal conduct. *Id.* But there is no authority that holds that barring someone from public office constitutes an affirmative disability or restraint. On the contrary, the statutes "impose[] no physical restraint, and so do[] not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint." *Smith*, 538 U.S. at 100. And "occupational debarment" has routinely been held to be *non*punitive, even when the disqualification is lifelong. *Id.* (compiling case law about the nonpunitive disqualification of bankers, union officials, and medical professionals from their chosen professions). Importantly, Sapp is not prohibited from

13

earning a living. He can currently choose from countless other jobs and professions aside from being a state politician in Illinois.

Sapp's second point that barring someone from office has historically been regarded as a punishment is similarly unsupported. Again, the right to hold office is not a fundamental right. *Brazil-Breashears*, 53 F.3d at 792. Neither are those convicted of felonies a protected class. *Hook*, 471 F.3d at 774. So, Sapp's attempt to equate his inability to hold office with slavery, involuntary servitude, or—more broadly—historical discrimination against Black Americans is unconvincing. Sapp thus does not cite any authority for the proposition that felon-bar statutes have been historically regarded as punishment.

Moving on, the *Mendoza–Martinez* factors on scienter and on whether the behavior to which the statutory scheme applies is already a crime are "of little weight in this case" because the felon-bar "regulatory scheme applies only to past conduct." *Smith*, 538 U.S. at 105. That said, Foxx is correct that felony convictions that trigger the felon-bar statutory scheme do not all have a scienter component. *See Cox v. Commodity Futures Trading Comm'n*, 138 F.3d 268, 273 (7th Cir. 1998) ("Several of the relevant crimes and statutes listed in §§ 8a(2)(D) and (E) do not require scienter …. The sanction thus does not come into play only on a finding of scienter.") So, the scienter factor weighs against Sapp. Conversely, the behavior to which the felon-bar statutes apply—committing a felony—is criminal. But that single factor favoring Sapp "is insufficient to render [the felon-bar statutes] criminally punitive." *Hudson v. United States*, 522 U.S. 93, 105 (1997).

14

That leaves three related factors to consider: whether barring someone from public office promotes retribution; whether there is a nonpunitive purpose for the statutory scheme; and whether the scheme appears excessive in relation to that nonpunitive purpose assigned. As to the first of these, Sapp argues that the felon-bar statutes are retributive because they are "continued punishment for crimes he committed nearly thirty years ago." Pl.'s TRO Br. at 17. But as discussed earlier, the purpose of the felon-bar statutes is not continued punishment; it is to ensure public confidence in the honesty and integrity of those serving in state and local offices. That nonpunitive purpose is served by the provision included in 65 ILCS 5/3.1-10.5(b) and 10 ILCS 5/29-15 that allows felons to hold office after pardon, restoration of rights, or otherwise according to law. If the statute's purpose was primarily retributive, it would likely not include a restorative provision. Instead, a punitive statute would categorically ban any felon, regardless of any attempt to show rehabilitation, from holding office. *See Cox*, 138 F.3d 268, 273 (7th Cir. 1998) ("Although conviction of one of the listed crimes gives rise to a presumption that a person is unfit for registration, a person may retain his registration by making a clear and convincing showing that his continued registration would not pose a substantial risk to the markets."). In short, there is no clear reason to believe that the felon-bar statutes are retributive, or that they do not have a nonpunitive purpose.

The final factor to consider is whether the felon-bar is excessive in relation to its nonpunitive purpose. Sapp argues that it is excessive because its effects are indefinite in time. But the statutes in question allow for the possibility of a lifting of the

bar. Sapp would need to receive a pardon or a restoration of rights. It is true that obtaining either of those can be difficult, but "a statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance." *Smith*, 538 U.S. at 103. On balance, then, Sapp has not come close to showing that 65 ILCS 5/3.1-10.5(b) and 10 ILCS 5/29-15 are punitive. On the contrary, there is ample reason to believe that the laws serve their intended nonpunitive purpose: to promote confidence in public servants in Illinois.

For all those reasons, Sapp's constitutional challenge under the Cruel and Unusual Punishment Clause fails. The statutes in question are not punitive, and Sapp does not argue that they are grossly disproportionate. That conclusion is nearly the end of the analysis. But there is an epilogue. In his response to the motion to dismiss, Sapp argues that his removal from office resulted in him forfeiting future earnings as Trustee of Sauk Village in violation of the Excessive Fines Clause. Pl.'s Resp. to Mot. Dismiss at 16–18. He later disclaims this argument in his TRO briefing. *See* Pl.'s TRO Reply at 9 ("This motion for temporary restraining order is predicated on Mr. Sapp's Amended Complaint allegations—strictly dealing with the Cruel and Unusual Clause of the Eighth Amendment—not the Excessive Fines Clause …."). In any event, Sapp was not subjected to any fines or fees when he was removed from office. 2022 State Court Op. and Order at 3. And there is no authority to support the argument that the Excessive Fines Clause applies to the loss of potential future earnings.

16

## IV. Conclusion

The final loose end is Foxx's issue- and claim-preclusion arguments. The Court does not address those arguments because the amended complaint fails on two other independently dispositive grounds, namely (1) because of Sapp's failure to overcome sovereign immunity and to include individual-capacity allegations; and more importantly (2) because the underlying unconstitutionality claim is without merit. Importantly, Sapp has received two opportunities to develop his arguments. In its analysis, the Court considered his response to the motion to dismiss as well as his later TRO briefing. Given that Sapp has received ample opportunity to develop his arguments, and that he has nonetheless failed to remedy crucial deficiencies, dismissal with prejudice is appropriate. Allowing him to amend his complaint once again would be futile. Foxx's motion to dismiss is granted, Sapp's TRO motion is thus denied, and final judgment will be entered. The hearing of June 22, 2023, is vacated.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 21, 2023

17